### PARKER *v.* McLEAN et al.

*(City Court of Brooklyn, General Term. December 22, 1890.)*

NEGOTIABLE INSTRUMENT—RESTRICTION OF USE—LIABILITY OF INDORSER.

> Real estate was exchanged by O. for personal property of E., subject to a chattel mortgage for $2,000. A note for that amount was to be made by E. and indorsed by M. and given to O. to pay off the mortgage. As the real estate was incumbered by taxes, a note was so made and indorsed for the balance due after deducting the taxes; it was delivered to O., with the understanding that he would take care of the chattel mortgage when due, which was three months earlier than the maturity of the note. Plaintiff, who had acted as attorney for O., made advances to him on the note, only part of which was applied to payment of the chattel mortgage. *Held*, that these facts did not show such a restriction of the use of the note as would sustain a defense by M. to an action by plaintiff thereon, on the grounds that M. was an accommodation indorser only, and that the note was diverted from the purpose for which it was made, and that plaintiff received it with notice of these facts. CLEMENT, C. J., dissenting.

Appeal from trial term.

Action by Asa W. Parker against Evelyn P. Everett, Alexander McLean, and Sampson B. Oulton, of whom only McLean answered the complaint.

On trial of the issues as to him, a verdict was directed for plaintiff. From the judgment for plaintiff entered thereon, and from an order denying a motion for a new trial, defendant McLean appeals.

Argued before CLEMENT, C. J., and OSBORNE, J.

*King & Clement*, for appellant. *Asa W. Parker, in pro. per.*

OSBORNE, J. This action was brought by the plaintiff to recover the amount of a certain promissory note held by him for $1,128.66, dated July 18, 1889, at four months, made by the defendant Everett, to her own order, and indorsed by the other defendants. The defendant McLean alone defends, and he sets up as a defense that said note was made and was indorsed by him "for the special use, purpose, and object of being applied to the payment of a certain mortgage on personal property at the Hotel Everett, in the city of New York, held by P. J. Hicks and others, trustees, and made by Evelyn P. Everett, and was so indorsed, and delivered to S. B. Oulton, without consideration, and for accommodation." He further alleges that both Oulton and plaintiff agreed that it should·be so applied, and for no other purpose; that said note was diverted by them and converted to their own use; and that plaintiff is not a *bona fide* holder for value, but that he received said note with notice of the foregoing facts, and without paying any consideration therefor. After hearing all the evidence, the learned trial judge directed a verdict for the plaintiff, for the sum of $1,050, being the amount advanced by him on the note. Defendant's counsel asked to go to the jury "on the question whether plaintiff made the agreement, and whether it was kept or not; and further on the question whether the note was not indorsed and delivered upon the condition which has not been complied with; and also upon the good faith of the plaintiff as to whether he was or was not a *bona fide* holder of the note." These requests were denied, and defendant excepted thereto, and to the direction of a verdict for the plaintiff. Defendant appeals from the judgment entered on the verdict so directed, and from an order denying a motion for a new trial.

Assuming, for the purposes of this appeal, that the defense, if established, was a good one, it becomes our duty to examine the evidence to determine whether appellant has presented on the trial sufficient evidence as to the alleged restriction of the use of the note to sustain a verdict in his favor if the jury had so found. It appears from the evidence that, early in 1889, plaintiff foreclosed certain mortgages on property in this city belonging to the defendant Oulton, and became the purchaser thereof on the foreclosure sale. He thereupon told Oulton that he wanted nothing more than the property cost him, and that, if Oulton could make any trade by which he could realize something out of the property, plaintiff would convey the property for what it cost him, taking a mortgage therefor. Thereupon Oulton made an agreement with the defendant Everett by which she was to take a conveyance of this real estate, or the equity therein, in exchange for certain restaurant property in the city of New York. This personal property was subject to a mortgage for $2,000, maturing in August, 1889, and in making the exchange it was agreed that the defendant Everett was to give Oulton her note for $2,000 to pay off this mortgage. The parties in interest met on about July 18, 1889, to close the transaction, and it was then learned that the real estate in Brooklyn was subject to taxes amounting to over $800 instead of being free and clear except the mortgages. The note for $2,000, as originally proposed, had already been made and indorsed. ᐧ The question came up as to who should pay the taxes, and it was then agreed that the amount of the taxes should be deducted from the $2,000, and a new note should be given for the balance, with the understanding that Oulton should take care of the chattel mortgage when it became due; and thereupon the first note for $2,000 was canceled, and the note in suit was made, indorsed,

and delivered to plaintiff, who acted as the attorney for Oulton in the transaction, and plaintiff delivered the note to his client, Oulton. Soon after the note was so delivered, plaintiff, at Oulton's request, advanced him $300 on the note, for the purpose of paying off certain debts against the hotel property, and subsequently, early in September, he advanced Oulton the further sum of $750 thereon, only $600 of which was applied towards the payment of the chattel mortgage.

We have very carefully examined all the evidence in this case, and have come to the conclusion that the appellant has failed to present evidence sufficient to sustain a verdict of a jury in favor of his contention. It is possible that if the original arrangement had been carried out to give the note for $2,000 to pay the chattel mortgage for that amount, there might have been some basis for defendant's contention; but that arrangement was altered, the amount of the taxes on the Brooklyn real estate was deducted from the amount of the note originally proposed to be given, and the note was only given for $1,128.86. This amount was insufficient to discharge the chattel mortgage, and yet, according to defendant's contention, unless that note, or its proceeds, were used to pay off the mortgage, he was not liable on it as indorser. If defendant's contention is correct, then, unless Oulton could raise the difference in cash between the amount of the note and the amount of the mortgage, so as to pay off the mortgage when it became due, the note was without value to him. It is also to be borne in mind, as strongly militating against defendant's position, that the mortgage became due in August, while the note did not mature till the following November. Plaintiff testifies that there was no such agreement as defendant claims. Mr. Wood, who had a claim against the hotel property, testifies: "There had been an agreement made that Mr. Oulton should receive a note of $2,000, to pay off a mortgage that would be due in about three months on this hotel property. * * * The question came up who was to pay the taxes. Mr. Oulton said he could not. Mr. Parker said he would not, but he said it could be deducted from this note, and he would take a note for the difference, with reference to the taxes,—the $800 taxes. So I told him I would have another note made out. The conversation was that this mortgage on the hotel property in New York would become due in about three months, and this note was given to pay that mortgage when it became due. There was a chattel mortgage of $2,000 on the property. The proceeds of that note was to pay it. Oulton was to have the mortgage discharged, and Miss Everett was to get the money to have it done with, instead of doing it at the time. There was a mortgage of $2,000 that Miss Everett was to discharge, and did not, but gave this note for that purpose. When we found there was $800 of taxes on the property, which was represented to be free and clear, excepting the first mortgage, Mr. Parker suggested we take it out of the $2,000 and make the note $1,100, with the same indorsements, and that would be satisfactory." Miss Everett testified that this note "was to be used for no other purpose than paying off this mortgage of $2,000." On her cross-examination, however, she stated that she could not tell what the transaction was, and had no recollection of what the contract was on that occasion, her father having acted for her, so that her evidence was entitled to little or no weight. The defendant McLean was not present at the closing of the exchange. General: King, one of the counsel for the defendant herein, was present at the closing, acting as attorney for Mr. Wood. He testifies that, at the closing, Mr. Wood presented the $2,000 note. "Then there was something said about taxes, and Mr. Parker said, 'You can take the taxes out of that note, and give a new note.' Then the further conversation went on in regard to the payment of the $2,000 chattel mortgage on the property in Park Row, New York, and Mr. Parker said, 'Give a new note for the difference between them, and we will take up that mortgage.'" "*Question.* Was the note made as suggested? *Answer.* The note was made as sug-

gested." On cross-examination, he testified, *inter alia: "Question.* Oulton had the right to get money to pay the mortgage? *Answer.* He might pay it out of the note as he pleased. I don't think there was any restriction on that. *Q.* Then Oulton had the option? *A.* I don't know about that. If a man has a note he can do what he pleases with it. *Q.* Then, he could go where he pleased to get the money? There was no restriction about where he was to go? *A.* That note was to be applied to the payment of the mortgage. That is what was agreed. *Q.* So far as you know, the understanding was Oulton could go where he pleased to get money on the note to pay the mortgage with? *A.* I understood the agreement was this note was to be applied to the payment of the mortgage." Mr. Oulton testified: "The note was given to me for so much money, and I was to take care of the mortgage." We fail to see in the foregoing testimony, (which is substantially all that relates to any agreement as to the restriction of the use of the note,) taking it all together, any evidence to sustain defendant's contention. Had a jury found in his favor, we think it would have been the duty of the court to set it aside as against the weight of evidence. We think the evidence clearly shows that the arrangement was that the amount of the taxes was to be deducted from the amount of the note for $2,000 originally proposed to be given, a new note was to be given for the difference, (being the note in suit,) and Oulton was to take care of the mortgage when it became due. The judgment and order denying motion for new trial should accordingly be affirmed, with costs.

CLEMENT, C. J., (*dissenting.*) The defendant claimed that he indorsed the note in suit as an accommodation, and on the condition that the note, or its proceeds, should be applied on account of a chattel mortgage for $2,000, held by a third party. The maker of the note testified that it was delivered to the plaintiff, as the attorney of Mr. Oulton, on the same condition. Two witnesses testify to the same agreement, John Wood and Horatio C. King. The witnesses for the defendant were subjected to a long cross-examination, but they adhered in the main to their first statement. Plaintiff and Mr. Oulton denied that there was any agreement or condition as to the use of the note or its proceeds. If Mr. McLean had personally made the arrangement with Oulton, he could defend without proof of injury, because he, (McLean,) though an accommodation indorser, was a party to the agreement. *Bookstaver* v. *Jayne,* 60 N. Y. 146, 150. There is proof in this case, or offer of proof, that McLean indorsed the note on a condition, and that Oulton and Parker received the note with notice of the condition. I think that McLean, without proof of injury, could defend on the ground that Oulton had diverted the note. The law would be the same as in case a direct agreement had been made between them.

I am also of opinion that McLean could defend on the ground that the maker (Miss Everett) had been injured by the diversion of the note. She, if sued, could set up the diversion as a defense, and not by way of recoupment or counter-claim. If the principal could succeed on such a defense, the surety had the same right. If Miss Everett has not been injured, it is incumbent upon the plaintiff so to prove. *Rochester* v. *Taylor,* 23 Barb. 18. Whether she collected her chattel mortgage for $10,500, which was subordinate to the first mortgage of $2,000, does not appear in the case, but it is shown that the $2,000 first mortgage was foreclosed. The respondent asks an affirmance on two grounds. The first claim is that parol testimony was inadmissible to prove the condition. There are many authorities to the contrary, and sustaining the right of the defendant so to do. *Bookstaver* v. *Jayne,* 60 N. Y. 146; *Bank* v. *Colwell,* 10 N. Y. Supp. 864; *Seymour* v. *Cowing,* *40 N. Y. 532; *Steel Co.* v. *Buckley,* 51 N. Y. Super. Ct. 342. The maker of a note can always, except as against a holder in good faith, show a failure of consideration, and when a note is diverted the consideration fails.

The second claim of the respondent is that there was no proof of an agreement as to how the note was to be used, and that the arrangement between the parties related solely to the proceeds. The agreement no doubt related to the proceeds, and not to the note itself, but Mr. Oulton had no right to apply to Mr. Parker, or to any other person, to discount the note for the express purpose of using the proceeds contrary to the agreement under which he received it; and Mr. Parker knew all that had taken place when the note was received. In this case the diversion of the proceeds was a diversion of the note. In discussing the facts of the case, I have assumed the truth of the testimony of the witnesses for the defendant, for the reason that a verdict was directed in favor of the plaintiff. On the whole case, the questions of fact should have been submitted to the jury. The judgment and order denying a new trial should be reversed, and a new trial granted, costs to abide the event.